**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROSEMARY A. HUGHES : | Case No.: 3:02CV-02177 (RNC) |
| : | |
| Plaintiff : | |
| v. : | |
| EQUITY OFFICE PROPERTIES TRUST : | FEBRUARY 28, 2005 |
| Defendant | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I.   INTRODUCTION

   This personal injury action has been brought in three counts alleging Negligence (First Count), Negligence per se (Second Count) and a violation of the Covenant of Good Faith and Fair Dealing (Third Count).  The Defendant moves for summary judgment as to all three counts because this action is time barred by the statute of limitations.  The Defendant also moves for summary judgment as to (1) Counts One and Two because the Defendant did not have possession or control of the premises and (2) Count Three because the Plaintiff was not a third party beneficiary to the subject lease agreement.

II.   STATEMENT OF FACTS

   The Plaintiff alleges that on December 9, 2000, while visiting a business premises leased by the Defendant, she fell down a short flight of stairs and suffered an injury.  This action was filed subsequent to her fall.  As the basis for this litigation the Plaintiff specifically contends that the Defendant was negligent in one or more of the following ways:

1

"(1)  In that the defendant caused or allowed and permitted said platform/landing and stairway to be or become depressed and uneven and dangerous for use of visitors and its invitees;

(2)  In that said platform/landing and stairway in the area where plaintiff fell was not adequately, or inadequately so, lit;

(3) In that it failed to erect or maintain proper safeguards, warnings, signs or failed to otherwise warn the plaintiff of the aforesaid conditions;

(4)  In that it caused or allowed and permitted said platform/landing and stairway to be and/or remain in a defective condition;

(5)  In that it caused or allowed and permitted said platform/landing and stairway to be constructed/altered/remodeled in an unsafe, improper and dangerous manner;

(6)  In that it maintained said property in the aforesaid conditions;

(7)  In that it failed, to remedy or repair said condition, or ensure that such was done, when the same was reasonably necessary under the circumstances;

(8)  In that it failed to make proper and reasonable inspection;

(9)  In that it permitted, or suffered, Houlihan's Restaurant Group to not have, or have inadequate liability insurance for personal injury to visitors to 'Sixty State Street.'"

By way of a Second Count, the Plaintiff alleges that the Defendant was Negligent per se. In this count, the Plaintiff makes a sweeping reference to "The BOCA National Building Code . . . as adopted by the Massachusetts Building Code" and claims that the "Defendant violated said Code."  (Amended Complaint at 9-10)  The Plaintiff has failed to reference the specific code

2

section which relates to her claim. She does, however, list what purports to be sections of the Code, which state:

"a. Handrails must be secured to the building wall or stanchion and must withstand the normally anticipated forces generated by the use of pedestrians;

b. The owner of every existing building and structure shall be responsible for maintaining them in a safe condition;

c. Stairs shall be equipped with artificial lighting facilities to provide the intensity of illumination therein prescribed continuously during the time that conditions of occupancy of the building require that they be used."

Finally, by way of a Third Count the Plaintiff has alleged that the Defendant violated the covenant of good faith and fair dealing. In this count the Plaintiff claims that she "was/is a third party beneficiary to the contract between the Defendant and its tenant" and that the Defendant somehow breached this contract with respect to her. (Amended Complaint at 10)

### III.  LAW AND ARGUMENT

#### A.  STANDARD OF REVIEW

"In moving for summary judgment against a party who will bear the burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim." Gore v. Colonial Penn Ins. Co., 335 F. Supp. 2d 296, 302 (D. Conn. 2004). Where a non-moving party fails to make a sufficient showing on an essential element of its case, the moving party is entitled to judgment as a matter of law. Gore v. Colonial

ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

Penn Ins. Co., 335 F. Supp. 2d 296, 302 (D. Conn. 2004). Although "inferences to be drawn from the underlying facts. . . must be viewed in the light most favorable to the party opposing the motion. . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. Instead, the party opposing summary judgment must set forth the specific facts in an affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial." Gore v. Colonial Penn Ins. Co., 335 F. Supp. 2d 296, 302 (D. Conn. 2004).

    B.    **THE STATUTE OF LIMITATIONS BARS THIS ACTION IN ITS ENTIRETY**

This action was not commenced within the two-year statute of limitations period provided by General Statutes § 52-584, thus, summary judgment must be granted.

Connecticut General Statutes § 52-584 applies to the present case.[1] As this court sits in diversity it is necessary to consider whether the laws, regarding the statute of limitations in an action of negligence, of Connecticut or Massachusetts will apply. It is well settled that "federal courts are to apply state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 461, 465 (1965). "Under Connecticut choice-of-law rules . . . Connecticut generally considers statutes of limitation to be procedural matters. Palacio v. Munies, 1999 U.S. Dist. LEXIS 12393 (D. Conn. Aug. 5, 1999). (Attached hereto as Exhibit A) This court has held that Connecticut General Statutes § 52-584, rather than Mass. Gen. Laws Chapter 260 Section 2A, applies in a

---

[1] Connecticut General Statutes § 52-584 provides in relevant part that, "no action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained."

4

common law negligence action. See Corrigan v. Clairol, 126 F. Supp. 791 (1954).[2] Thus, Connecticut's two-year statute of limitations applies to the present case.

The Plaintiff failed to serve the complaint within the confines of § 52-584, thus the action is time-barred. The Federal court, when sitting in diversity, applies Connecticut state law to determine the date upon which an action is commenced. Rocco v. Garrison, 268 Conn. 541, n.10 (2004). In Connecticut, it is well settled that an action is brought on the date on which the writ is served on a defendant. See generally Hillman v. Greenwich, 217 Conn. 520, 527 (1991); Lacasse v. Burns, 214 Conn. 464, 475 (1990); Seaboard Burner Corporation v. Delong, 145 Conn. 300, 303 (1958); Howard v. Robertson, 27 Conn. App. 621, 625 (1992). Consequently, Rule 3 Fed. R. Civ. P., does not apply to this case. See Converse v. Gen. Motors Corp., 893 F.2d 513, 515 (2d Cir. 1990) (holding that "Connecticut's actual service, rather than Rule 3 Fed. R. Civ. P., govern[s] commencement"). Moreover, in countless cases, actions have been barred by the statute of limitations because the complaint was not "actually served" before the statute ran. See generally Russo v. Harra's Atl. City, 1991 U.S. Dist. LEXIS 14884 (D. Conn. July 17, 1991) (defendant's motion for summary judgment granted where plaintiff mailed complaint two days before running of statute, but defendant received it two days after the statute of limitations expired); Palacio v. Munies, 1999 U.S. Dist. LEXIS 12393 (D. Conn. Aug. 5, 1999) (defendant's motion for summary judgment granted where plaintiff failed to show that defendant actually received complaint prior to running of the statute); Choquette v. Sanfilippo, 2001 U.S. Dist. LEXIS 17344 (D. Conn. Sept. 28, 2001) (defendant's motion for summary judgment

---

[2] Massachusetts General Laws Chapter 260 Section 2A provides in relevant part that, "actions of tort . . . shall be commenced only within three years next after the cause of action accrues." (attached hereto as Exhibit A)

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

granted where plaintiff filed complaint prior to running of statute, but served defendant after the statute ran.) Summary judgment should be granted here as well.

In this case, the date of loss is December 9, 2000. However, the complaint was not filed with the court until December 10, 2002. Moreover, the Defendant was not "actually served" with the complaint until January 1, 2003.[3] The action, therefore, was not commenced until well after the two-year statute of limitations prescribed by General Statues § 52-584. As such, this action is barred by the statute of limitations and summary judgment must be granted as to all counts in the Defendant's favor.

C.      **THE DEFENDANT DID NOT EXERCISE CONTROL OVER THE PREMISES**

Summary judgment must be granted as to Counts One and Two[4] because the Defendant did not owe the Plaintiff a duty of care.

---

[3] The Defendant also notes that this action cannot be saved by Connecticut General Statutes § 52-593a. "That statute allows a right of an action to continue after the statute of limitations has expired if the marshal . . . receives the writ of summons and complaint *before* the statute of limitations has expired." (emphasis added). Hibner v. Bruening, 78 Conn. App. 456, 462 (2003). In this case, the writ of summons and complaint is stamped received by a United States marshal on December 19, 2002-well after the statute had run. Thus, §52-593a is inapplicable because the writ and summons were not delivered to a Marshall for delivery prior to the expiration of the statute of limitations.

[4] The Plaintiff's claim of negligence per se is apparently based on the ground that the Defendant was the owner of the building. Again, the Defendant notes that the Plaintiff has not expressly stated the provisions of the Massachusetts State Building Code upon which she relies. In addition, the Defendant's review of 780 CMR 1022.0 et. seq. regarding Handrails (attached hereto as Exhibit A), and 780 CMR 1024.0 (Exhibit A) regarding Means of Egress Lighting, did not reveal the particular language cited by the Plaintiff. In any event, 780 CMR defines an owner, *inter alia*, as a "lessee under a written letter agreement. . . . Each such person is bound to comply with the provisions of 780 CMR." See 780 CMR Definitions attached hereto as Exhibit A  Moreover, the General Laws of Massachusetts 143, § 51 provides in relevant part that "the owner, lessee, mortgagee in possession or occupant, being the party in control of a . . . building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any said provisions." (emphasis added). (Attached hereto as Exhibit A) Thus, for the reasons set forth in Section B of this Motion, any responsibility for compliance with the Massachusetts State Building Code was that of the tenant, and not the Defendant.

6

At the outset, because court sits in diversity, it is necessary to conduct a choice of law analysis.  "A federal court sitting in diversity applies the conflict of law rules of the forum state to determine which states' substantive law governs the dispute." Mutual Casualty Co. v. Dillon, 2000 U.S. Dist. LEXIS 13330 *7 (D. Conn. August 31, 2000).  In Connecticut, "the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or lex loci delecti." O'Connor v. O'Connor, 201 Conn. 632, 636 (1986).  Therefore, the court should apply Massachusetts law regarding the standard of care owed by a landlord to a business invitee in this case.

"In order to recover on a negligence theory, . . . the plaintiff must show the existence of an act or omission in violation of a . . . duty owed to the plaintiffs by the defendant." (Internal quotation marks omitted). Dinsky v. Framingham, 438 N.E.2d 51 (1982). (Attached hereto as Exhibit A) Duty is a question of law to be resolved by the judge.  Cottam v. CVS Pharmacy, 764 N.E.2d 814 2002 (Attached hereto as Exhibit A) In addition, the "[p]laintiff must also show a causal relationship between a breach of any duty that does exist and the harm for which plaintiff seeks compensation."  Rose v. McLean, 2004 Mass. Super. LEXIS 174 *4 (Superior Court of Massachusetts at Suffolk, Apr. 14, 2004) (attached hereto as Exhibit A). In this case, the Plaintiff cannot show that the Defendant owed, and therefore breached, any duty toward her.  Thus, her action must fail as a matter of law.

A landlord's duty to a business invitee of a tenant is no greater than the duty owed to the tenant himself. Carney v. Bereault, 204 N.E. 2d 448, 452 (1965). (Attached hereto as Exhibit A) A landlord's obligations, with regard to a commercial lease, are as follows, "a landlord has a duty

7

to keep the premises in safe condition, with attendant liability if he does not, <u>only</u> if (1) he has undertaken so to do under the terms of the lease or (2) the location of the defect that caused injury was in a common or other area appurtenant to the leased premises over which the [landlord] had some control." (Emphasis added, internal quotation marks omitted.) <u>Sheehan v. El Johnan, Inc.</u>, 650 N.E. 2d 819, 820 (1995). (Attached hereto as <u>Exhibit A</u>)  Moreover, "[i]f a tenant . . . occupies the entire premises – i.e., there are no areas used in common with other tenants –then the tenant is responsible for keeping the premises safe, absent a contractual undertaking to the contrary by the landlord." <u>Id.</u>,

In <u>Carney v. Bereault</u>, 204 N.E. 2d 448 (1965) the plaintiff, a business invitee at a gas station, was injured when struck by a car undergoing an oil change. <u>Id.</u>, at 450. The plaintiff sued both the landlord and tenant of the garage. <u>Id</u>. The court held that, because the landlord was not in control of the premises, the plaintiff needed to establish that the landlord owed a duty to the tenant to repair. <u>Id.</u>, at 453. The lease at issue did not obligate the landlord to make any repairs, thus the plaintiff was unable to meet its burden. <u>Id</u>. In addition, because the landlord had not contracted to maintain the premises in a safe condition on its own responsibility and without notice, the landlord could not be liable for the failure to discover and remedy the defect. <u>Id</u>.

In this case, Article 4.1.5 of the lease agreement explicitly provides that "Tenant on paying the rent and performing the obligations in this lease shall peacefully and quietly have, hold and enjoy the premises." (See Lease Agreement attached hereto as <u>Exhibit B</u>)  In addition, the subject lease does not obligate the Defendant to make any repairs to the premises. In fact, the

8

only maintenance service provided by the Defendant includes "maintenance of the HVAC system." Moreover, a reading of Exhibits C and D of the Lease Agreement reveals that the <u>tenant</u>, was responsible for all lighting and bulb replacement, floor covering, identifying signs, architectural and engineering design of the space and any other item not specifically listed as a responsibility of the Defendant. Thus, the Defendant had no duty to discover, maintain or repair the stairway, lighting, signs or railing at issue in the Complaint.

Furthermore, the facts of this case show a striking resemblance to Carney. First in this case, just as in <u>Carney</u>, the Defendant did not undertake a duty by way of the lease agreement to keep the premises in a safe condition. In fact, pursuant to Article 5.2 of said lease agreement, the tenant covenants to "keep the premises in good order, repair and condition." Second, and also like <u>Carney,</u> the tenant, Houlihan's, was the sole occupant of the restaurant space. As such, no other tenant shared the stairs or railing in common with Houlihan's. Consequently here, just as in <u>Carney</u>, because the premises were solely in control of the tenant, the Defendant had no duty to keep the premises in a safe condition. Third, and finally, the Lease Agreement in this case is devoid of a provision obligating the Defendant to maintain the premises in a safe condition on its own responsibility and without notice. Rather, under the lease, the Defendant had the right to "examine the premises at reasonable times, and if [Defendant <u>so elected</u>] to make an repairs or replacement [the Defendant] deemed necessary." The Defendant had also covenanted to "make repairs to the roof/exterior walls, floor slabs, and common areas and facilities as may be necessary to keep them in serviceable condition." Therefore, as in <u>Carney</u>, the Defendant did not

9

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

have an obligation to discover the allegedly "wobbly" railing, maintain the "depressed" stairs or maintain the lighting.

Because the Defendant was not in control of the premises, and did not undertake any duty to repair or maintain such, the Defendant did not owe any duty of care to the Plaintiff. It follows, therefore, that the Defendant did not breach any duty with respect to the Plaintiff. Thus, summary judgment must be granted.

### C. PLAINTIFF IS NOT A THIRD PARTY BENEFICIARY TO THE LEASE

The Plaintiff's claim that the Defendant breached the Covenant of Good Faith and Fair Dealing is baseless because the Plaintiff is not a third party beneficiary of the lease agreement between the Defendant and its tenant, Houlihan's. Summary judgment, therefore, must be granted in the Defendant's favor.

Again, at the outset, it is necessary to conduct a choice of law analysis because court sits in diversity. "A federal court sitting in diversity applies the conflict of law rules of the forum state to determine which states' substantive law governs the dispute." Mutual Casualty Co. v. Dillon, 2000 U.S. Dist. LEXIS 13330 *7 (D. Conn. August 31, 2000). In Connecticut, "a contract is construed according to the law of the place where the contract was made." Williams v. State Farm Mutual, 229 Conn. 359, 366 (1994). Thus, Massachusetts's law regarding third party beneficiaries governs this case.

Massachusetts adopted the rule of the Restatement (Second) of Contracts § 302 (1981), and therefore, "limit[s] enforcement by beneficiaries to those who are intended beneficiaries. . . . It must appear from the language and circumstances that the parties to the contract clearly and

10

definitely intend the beneficiaries to benefit from the promised performance." (citations omitted; internal quotation marks omitted) Miller v. Mooney, 725 N.E. 2d 545, 550 (2000). (Attached hereto as Exhibit A) The Restatement provides that, "a beneficiary is an intended beneficiary if recognition of a right to performance in the promise is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Miller, at 550. In contrast, an incidental beneficiary, one who is not an intended beneficiary, has no enforceable rights under a contract. Id. Massachusetts courts have held that, "the mere fact that a third party benefits or is damaged by the contracting parties' performance, or lack thereof, on a contract does not, in itself, give rise to a duty by the contracting parties to such third party, and thus cannot be the sole basis for a cause of action by the third party for a contracting party's negligence." Seiden v. Village Haven Rest Home, 1995 Mass. Super. LEXIS 418 (Superior Court of Mass. at Middlesex Aug. 8, 1995). (Attached hereto as Exhibit A) Moreover, "the contracting parties" intent determines whether a third party is an incidental or intended beneficiary." Id., at 14.

In Seiden, status as a resident of the leased premises did not give rise to third party beneficiary status under the lease agreement between the landlord and tenant. Id. There, the plaintiff brought a wrongful death action on behalf of his brother ("brother"), a former resident of the defendant. Id. The plaintiff argued that brother was an intended beneficiary of the lease and therefore, the defendant had an obligation to insure that brother would not commit suicide. Id., at

11

5. The court held that the lease only indicated that the premises would be used as a rest home and that no evidence existed to show that the purpose of the lease was to provide adequate facilities for the residents. Id., at 14. Moreover, the lease did not identify the residents as intended beneficiaries either implicitly or explicitly. Id. The court also found that the defendant did not have a contractual duty to prevent brother's suicide. Id., at 5. Thus, brother was at most an incidental beneficiary to whom the defendant owed no duty. Id.

Similarly, the lease at issue does not purport to provide a safe facility for business invitees. Indeed, neither patrons nor customers are mentioned in the lease agreement. Therefore, there is nothing to show that the contracting parties intended the Plaintiff to be an intended beneficiary. As such, the Plaintiff is at most an incidental beneficiary under the lease agreement and therefore, has no rights under the agreement.

## IV.   CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that summary judgment be granted in its favor.

THE DEFENDANT,
EQUITY OFFICE PROPERTIES TRUST

BY: /s/ Darren E. Sinofsky
    Darren E. Sinofsky, Esquire
    Federal Bar No.: ct 21118
    Morrison Mahoney LLP
    One Constitution Plaza, 10th floor
    Hartford, CT 06103
    Telephone: (860) 616-4441
    Fax: (860) 244-3800

12

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

## CERTIFICATION

      I hereby certify that a copy of the foregoing was mailed via U.S. mail, to the following parties of record postage prepaid this 28th day of February, 2005 as follows:

Eddi Z. Zyko, Esq.
120 Fenn Road
Middlebury, CT 06762

                                  /s/ Darren E. Sinofsky
                                      Darren E. Sinofsky

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459