## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSEMARY A. HUGHES | CIVIL ACTION:<br>3:02-cv-2177 (RNC) |
| Plaintiff, | |
| V. | May 24, 2005 |
| EQUITY OFFICE PROPERTIES TRUST | |
| Defendant. | JURY TRIAL REQUESTED |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

The plaintiff hereby opposes the defendant's Motion for Summary Judgment dated February 28 2005.

### II. FACTS

On December 9, 2000, the defendant owned/ operated/ managed/ leased "Sixty State Street" at 60 State Street, Boston, Massachusetts 02109, which is just east of Congress Street in Boston's Financial District. "Sixty State Street" adjoins Faneuil Hall and Quincy Market in Boston's Financial District. The building is adjacent to the Government Center transportation hub and is well located for both easy access and superior amenities. "Sixty

ORAL ARGUMENT IS REQUESTED
TESTIMONY NOT REQUIRED

State Street" is an 11-sided, 38-story building, which has approximately 823,000 rentable square feet of office space and 5,500 rentable square feet of retail space. The lobby walls and flooring are constructed of imported granite from Italy complemented by mahogany trim. Two dark bronze revolving doors are utilized to provide access to the many visitors through-out the day along with balanced wind doors for handicap access. The lobby contains four major store fronts constructed of multiple glass panels trimmed with mahogany rails allowing for an open and spacious feel. The building contained a Houlihan's Restaurant in one of said major store fronts, which was one of its three public eateries.

During the time relevant hereto, Houlihan's Restaurant Group, whose mailing address is P.O. Box 16000, Kansas City, Missouri 64112:

a. Owned said Houlihan's Restaurant as one of the four it owned/ operated in Massachusetts.

b. Was a tenant of defendant in "Sixty State Street".

c. Was permitted, or suffered, by defendant to not have, or have inadequate, liability insurance for personal injury to visitors to "Sixty State Street".

d. Filed a Proceeding Under Chapter 11 in the United States Bankruptcy Court, Western District of Missouri at Kansas City, known as Case Number 02-40359-ABF, naming plaintiff as a creditor.

e. No longer owns/ operates a Houlihan's Restaurant in Massachusetts.

On December 9, 2000, plaintiff, a 55 (now 57) years old women, and three of her friends were attracted as tourists to Faneuil Hall and Quincy Market in Boston's Financial District or CBD wherein "Sixty State Street" is located. At about 12:30 P.M., the plaintiff and her friends walked to said "Sixty State Street" and presented themselves at said Houlihan's for lunch. After entering through the double doors, they were greeted by a hostess. Plain-

tiff's friend, Barbara Redding, asked that the group be seated in the "smoking" section. The hostess informed them that they would have to sit in the bar area. The hostess pointed towards the stairs leading down to the bar area and said nothing else to the group. Barbara Redding went down the stairs first. As plaintiff was wearing gloves, she removed her right glove as she approached the stairway. This was so that plaintiff could get a better grasp on the stair railing. The stair way was dimly lit and, therefore, very dark and the railing was very wobbly, which plaintiff was not aware of until she attempted to use it. Plaintiff's other friends, Alice Smolenski and Joan Seastrand, were walking behind her as they walked toward the stairs. Plaintiff stood with both feet on the top stair/ landing/ platform. There were seven or possibly eight stairs and the top stair was actually part of the landing/ platform and looked like a stair at that point. The stairs were quite deep from the front of each to the back thereof. Plaintiff took hold of the railing and placed her right foot on the second stair, which was actually the first step down from the landing/ platform, and then, as she began to bring her left foot down to it, -- plaintiff always walks up or down stairs one step at a time -- she began to fly forward and downward. Plaintiff tried to stop herself by grasping the railing as tightly as she could, but to no avail; it wobbled. Plaintiff flew quickly all the way to the bottom of the flight of stairs, striking her head on what she later learned was the back of the seat part of a high stool/ chair. Said stool/ bar chair was placed too close to the stairway. As plaintiff rolled over on the floor, the manager on duty (a female) came to her aid. She told plaintiff that she was bleeding and should not try to get up. The manager applied pressure to the bleeding cut on plaintiff's head using a cloth napkin. An ambulance was summoned and the manager told the attendants therewith to take plaintiff to Massachusetts General Hospital for treatment.

### III. ARGUMENT

A. Defendant's Motion for Summary Judgment relies initially, and generally, upon statute of

limitations grounds. But:

1. Tolling of limitations period during pendency of in forma pauperis motion, even when federal government is defendant, allows 28 USCS § 1915 and Federal Rules of Civil Procedure, Rule 15(c) to operate harmoniously; since delay in District Court deciding whether to grant motion could easily consume limitations period making impracticable filing of in forma pauperis petitions. Once plaintiff has filed complaint and petition to proceed in forma pauperis within limitations period, the period is tolled for purposes of Rule 15(c) to allow service of summons and complaint at later direction of District Court. See *Paul v Department of Air Force* (1987, CAA III) 830 Fad 79, 44 BAN FEP As 1473, 44 NCH EDDI P 37467, 8 ADR Serve 3d 1183. Here:

2. The limitation period ended (without benefit of the additional period that the undersigned's handing the appropriate process for service to an appropriate process server within the limitation period) on December 9, 2002.

3. The plaintiff filed her Complaint  (a file stamped copy of Page 1 thereof is Exhibit A hereto) and Motion for Leave to Proceed In Forma Pauperis Pursuant to 28 U.S.C.  § 1915 (a file stamped copy of Page 1 thereof is Exhibit B hereto) on December 6, 2002.

4. The Clerk of this Court sent notice in a letter dated December 12, 2002 of the granting of the plaintiff's said Motion for Leave to Proceed In Forma Pauperis to the undersigned, which contained instructions pursuant to the granting of said Motion for Leave to Proceed In Forma Pauperis with which the plaintiff complied (a copy thereof is Exhibit C hereto).

Therefore, as a matter of law, defendant's statute of limitations ground is without merit.


B. The remaining grounds deal with the plaintiff's three causes of action, sounding in negligence, negligence per se and violation of the covenant of good faith and fair dealing by the defendant. The defendant posits in opposition thereto that it did not exercise control over

4

the premises and plaintiff is not a third party beneficiary to the lease. Taking the defendant's said arguments in turn, we see:

1. The applicable law of the Commonwealth of Massachusetts (a copy thereof is at Exhibit D hereto), being in effect since February 28, 2005, is as follows:

**780 CM: STATE BOARD OF BUILDING REGULATIONS AND STANDARDS**

**780 CM 2.00 DEFINITIONS**

**Owner:** Every person who alone or jointly or severally with others (a) has legal title to any building or structure; or (b) has care, charge, or control of any building or structure in any capacity including but not limited to agent, executor, executrix, administrator, administratrix, trustee or guardian of the estate of the holder of legal title; or (c) lessee under a written letter agreement; or (d) mortgagee in possession; or (e) agent, trustee or other person appointed by the courts. Each such person is bound to comply with the provisions of 780 CM. (emphasis added)[*]

**Person:** Includes a corporation, firm, partnership, association, organization any any other group acting as a unit as well as individuals. It shall also include an executor, administrator, trustee, receiver or other representative appointed according to law. Whenever the word "person" is used in any section of 780 CM prescribing a penalty or fine, as to partnerships or associations, the word shall include the partners or members thereof, and as to corporations, shall include the officer, agent or members thereof who are responsible for any violation of such section.

**780 CM 101.0 SCOPE**

**101.0 Title:** 780 CM shall be known as the Commonwealth of Massachusetts State Building Code.

**101.2 Scope:** 780 CM, in accordance with St. 1984, c. 348, as amended shall control all matters concerning:

(a) the construction, reconstruction, alteration, repair, demolition, removal, inspection, issuance and revocation of permits or licenses, installation of equipment, classification and definition of any *building* or *structure* and use or *occupancy* of all *buildings* and *structures* or parts thereof except bridges and appurtenant supporting structures which have been or are

---

[*] This is the entire definition of "owner". In Footnote 4 of its Memorandum, defendant sought to have the court believe that "owner" only meant "a lessee under a written letter agreement. By its very terms, 780 CM 2.00 DEFINITIONS subsumes the defendant.

to be constructed by, or are under the custody and control of the Department of Public Works (Massachusetts Highway Department), the Massachusetts Turnpike Authority, the Massachusetts Bay Transportation Authority, the Metropolitan District Commission, or the Massachusetts Port Authority or for which said agencies have maintenance responsibility;

(b)  the rehabilitation and maintenance of *existing buildings*;

(c)  the standards or requirements for materials to be used in connection therewith, including but not limited to provisions for safety, ingress and egress, energy conservation and sanitary conditions; ....

**101.4 Intent:**  780 CM shall be construed to secure its expressed intent, which is to insure public safety, health and welfare insofar as they are affected by building construction, through structural strength, adequate *means of egress* facilities, sanitary condition, light and ventilation, energy conservation and fire safety; and, in general, to secure safety to life and property from all hazards incident to the design, construction, reconstruction, alteration, repair, demolition, removal, use or *occupancy of buildings, structures or premises.*

### 780 CM 102.0 APPLICABILITY

**102.1 General**:  The provisions of 780 CM shall apply to all matters affecting or relating to *buildings* and *structures*, as set forth in 780 CM 101.0 and shall apply with equal force to municipal, county, state authorities or of established by the legislature and private *buildings* and *structures*, except where such *buildings* and *structures* are otherwise provided for by statute.   The construction, reconstruction, alteration, repair, addition, change in use or *occupancy,* demolition, removal of all *buildings* and *structures* shall comply with 780 CM.

### 102.5 Applicability to Existing Buildings

**102.5.1  General:**  *Existing buildings and structures* shall comply with the provisions of 780 CM 102.5 and all other applicable provisions of 780 CM.

**102.5.2** Unless  specifically provided otherwise in 780 CM, any *existing building* or *structure*  shall meet and shall be presumed to meet the provisions of the applicable laws, codes, rules or regulations, bylaws or ordinances in effect at the time such *building* or *structure* was constructed or altered and shall  be allowed to continue to be occupied pursuant to its use and *occupancy,* provided *that the* building or structure  shall be maintained in accordance with 780 CM 103.0.

**102.5.3** In cases which applicable codes, rules or regulations, bylaws or ordinances were not in use at the time of such construction or alteration, the provisions of 780 CM 103.0 shall apply.

6

**102.5.4**   In cases where the provisions of 780 CM are less stringent than the applicable codes, rules or regulations, bylaws or ordinances at the time of such construction or substantial alteration, the applicable provisions of 780 CM shall apply, providing such application of these provisions does not result in danger to the public, as determined by the building official.

**102.5.5**   *Existing buildings*  or  parts or portions thereof which are proposed to be enlarged, altered, repaired or changed in use or occupancy shall comply with the provisions of 780 CM 34.

### 780 CM 103.0  MAINTENANCE

**103.1 General:**  All *buildings* and *structures* and all parts thereof, both existing and new, and all systems an equipment therein which are regulated by 780 CM shall be maintained in a safe, operable and sanitary condition.   All service equipment, *means of egress,* devices and safeguards which are required by 780 CM in a *building or structure*, or which were required by a previous statute in a *building or structure*, when erected, altered or repaired, shall be maintained in good working order.

**103.2  Owner responsibility:**  The owner, as defined in 780 CM 2, shall be responsible for compliance with provisions of 780 CM 1.3.0.

Pursuant to the foregoing, the defendant, the undisputed owner/ operator/ manager/ lessor of "Sixty State Street", had a preexisting, non-delegable duty to the plaintiff  to ensure her safety as aforesaid at the same time Houlihan's had the same duty to the plaintiff. Since all the cases cited by the defendant do not address this issue, they are inapposite. The allegations of her Amended Complaint delimits how the defendant  breached said duty to the plaintiff. Also, see the plaintiff's disclosed expert's Affidavit in Support of Plaintiff's Memorandum in Opposition to Defendants's Motion for Summary Judgment, which is incorporated here. Whether or not the alleged breaches of the defendant's said duty occurred, and the damages to the plaintiff if so, is a question of fact for the jury  to determine.

2. The plaintiff is a third party beneficiary to the "Lease Agreement".  Indeed, this fact is manifest from the very first page of  the "Lease Agreement", which delimits in pertinent part:

ARTICLE I, Reference Data, 1.1 Subjects referred to

7

Each reference in this lease to any of the following subjects shall be construed to incorporate the data stated for that subject in this Article: ....

PERMITTED USES: First class food and alcoholic beverage service facility

PUBLIC LIABILITY INSURANCE: Bodily Injury -- $500,000/$500,000
                                             Property Damage -- $100,000

This is reinforced by the following sections of Article V, Tenant's Covenants:

Tenant covenants during the term and such further time as Tenant occupies any part of the Premises: ....

5.16 to open for business on the commencement of the Term and to remain open for business from no later than !!:30 a.m. until no earlier than 9 p.m. on weekdays excluding local and legal holidays and days on which "liquor-by-the-drink" is prohibited from being sold until this lease is terminated.

Plaintiff and her three friends -- customers to whom tort liability by the defendant and Houlihan's foreseeable may arise from their being attracted onto "Sixty State Street" -- are the "business" and "public" explicitly referred to therein and intended to be covered thereby. Therefore, according to its very terms, the plaintiff is a third party beneficiary to the "Lease Agreement", which contained an implied covenant of good faith and fair dealing by operation of the common law. The allegations of her Amended Complaint delimits how the defendant breached said implied covenant of good faith and fair dealing vis a vis the plaintiff. Whether or not the alleged breaches of the defendant's said implied covenant of good faith and fair dealing occurred, and the damages to the plaintiff if so, is a question of fact for the jury to determine.

Wherefore, the defendant's Motion for summary Judgment should be denied.

THE PLAINTIFF,

BY *Eddi Z. Zyko*
EDDI Z. ZYKO, ESQUIRE
120 FENN ROAD
MIDDLEBURY, CT 06762
CT JURIS NO. 71655
FEDERAL BAR NO. CT-14172
TEL NO: 203-758-8119
FAX NO: 203-598-7994

## CERTIFICATION OF SERVICE

I hereby certify that on May 24, 2005 a copy of the foregoing was mailed first class, postage prepaid to the counsel for the defendants: Morrison, Mahoney & Miller, One Constitution Plaza, 10th Floor, Hartford, CT 06103.

*Eddi Z. Zyko*
EDDI Z. ZYKO, ESQUIRE

9

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSEMARY A. HUGHES<br>16 MARION AVENUE<br>WATERBURY, CONNECTICUT 06708-2004,<br><br>    Plaintiff,<br><br>V.<br><br>EQUITY OFFICE PROPERTIES TRUST<br>TWO NORTH RIVERSIDE PLAZA, SUITE 2100<br>CHICAGO, ILLINOIS 60606,<br><br>    Defendant. | CIVIL ACTION<br><br><br><br><br>December 5, 2002<br><br><u>JURY TRIAL REQUESTED</u> |

## COMPLAINT

Comes now plaintiff, Rosemary A. Hughes, and hereby files a complaint for injuries she received caused by defendant, Equity Office Properties Trust.

## A. PARTIES

1. Plaintiff, Rosemary A. Hughes, is an individual, who is a citizen of the State of Connecticut and resides at 16 Marion Avenue, Waterbury, Connecticut 06708-2004.

2. a. Defendant, Equity Office Properties Trust, is a real estate investment trust (REIT) that owns the EOP Operating Limited

1

*Exhibit A*

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROSEMARY A. HUGHES | : | |
| 16 MARION AVENUE | : | CIVIL ACTION |
| WATERBURY, CONNECTICUT 06708-2004, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| EQUITY OFFICE PROPERTIES TRUST | : | December 5, 2002 |
| TWO NORTH RIVERSIDE PLAZA, SUITE 2100 | : | |
| CHICAGO, ILLINOIS 60606, | : | |
| | : | |
|     Defendant. | : | |

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
## PURSUANT TO 28 U.S.C.§1915

Plaintiff requests leave to commence this civil action without prepayment of fees, costs, or security therefor pursuant to 28 U.S.C. § 1915.  In support of her request, plaintiff submits the attached financial affidavit and states that she:

    (1)  Is unable to pay such fees, costs, or give security therefor.

    (2)  Is entitled to commence this action against the defendant.

    (3)  Requests that the court direct the United States Marshall's Service to serve process.

PLAINTIFF,

By _Eddi Z. Zyko_

EDDI Z. ZYKO, ESQUIRE
120 FENN ROAD
MIDDLEBURY, CT 06762
CT JURIS NO. 71655
FEDERAL BAR NO. CT-14172
TEL.(203) 758-8119
FAX (203) 598-7994

*Exhibit B*

# UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT
### OFFICE OF THE CLERK
### UNITED STATES COURT HOUSE
### 141 CHURCH STREET
### NEW HAVEN, CT 06510

TEL. No. (203) 773- 2140

Kevin F. Rowe
CLERK

Victoria C. Minor
CHIEF DEPUTY CLERK

Lori Inferrera
DEPUTY IN CHARGE
HARTFOR

December 12, 2002

Eddi Z. Zyko
120 Fenn Road
Middlebury, CT 06762

Dear Mr. Zyko:

Please be advised that your client's Motion for In Forma Pauperis has been granted. I have included a copy of the endorsement filed with the Clerk's Office and the Notice to Counsel, Order on Pretrial Deadlines and miscellaneous papers that make up the service packet. Your case number, **3:02-cv-2177 (GLG)**, has been assigned to Judge Gerard L. Goettel who presides in the Waterbury, Connecticut office. *All future filings on this case are to be filed in the New Haven seat of court.*

I have also included USM285 Marshal form to be filled out by you. Please follow the enclosed instructions on filling out this form required for service and return everything to New Haven at:

U.S. District Court
141 Church Street
New Haven, CT 06510

Please include a copy of your client's endorsed in forma pauperis application, original complaint and the assigned judge's notice to counsel and pretrial order packets to be served along with the Waiver of Summons and Marshal forms. If you have any questions I can be reached at 203-773-2140.

Sincerely,
Kevin F. Rowe, Clerk

By: Rebecca Rodko
Deputy Clerk

*Exhibit C*

### 780 CMR:  STATE BOARD OF BUILDING REGULATIONS AND STANDARDS

### THE MASSACHUSETTS STATE BUILDING CODE

and *structures*, as set forth in 780 CMR 101.0 and shall apply with equal force to municipal, county, state authorities of or established by the legislature and private *buildings* and *structures*, except where such *buildings* and *structures* are otherwise provided for by statute. The construction, reconstruction, alteration, repair, addition, change in use or *occupancy*, demolition, removal of all *buildings* and *structures* shall comply with 780 CMR.

**102.2 Matters not provided for:** Any requirements that are essential for the structural, fire or sanitary

**102.3 Zoning Bylaw Restrictions:** When the provisions herein specified for structural strength, adequate egress facilities, sanitary conditions, equipment, light and ventilation, energy conservation or fire safety conflict with the local zoning bylaws or ordinances, 780 CMR shall control the construction or *alteration* of *buildings* and *structures* unless such bylaws or ordinances are promulgated in accordance with the provisions of M.G.L. c. 143, § 98.

**102.4 General bylaw restrictions:** When the provisions herein specified for structural strength, adequate egress facilities, sanitary conditions, equipment, light and ventilation, energy conservation or fire safety conflict with the local general bylaws or ordinances, 780 CMR shall control the construction or *alteration* of *buildings* and *structures* unless such bylaws or ordinances are promulgated in accordance with the provisions M.G.L. c. 143, § 98.

**102.5 Applicability to Existing Buildings**

**102.5.1 General:** *Existing buildings* and *structures* shall comply with the provisions of 780 CMR 102.5 and all other applicable provisions of 780 CMR.

**102.5.2** Unless specifically provided otherwise in 780 CMR, any *existing building* or *structure* shall meet and shall be presumed to meet the provisions of the applicable laws, codes, rules or regulations, bylaws or ordinances in effect at the time such *building* or *structure* was constructed or altered

safety, interior climate comfort of an existing or proposed *building* or *structure*, or for the safety of the occupants thereof, which are not specifically provided for by 780 CMR, shall be determined by the building official. The State Board of Building Regulations and Standards (hereinafter referred to as the BBRS) and the Department of Public Safety shall be notified by the building official in writing within seven working days of any action taken pursuant to 780 CMR 102.2.

and shall be allowed to continue to be occupied pursuant to its use and *occupancy*, provided that the *building* or *structure* shall be maintained in accordance with 780 CMR 103.0.

**102.5.3** In cases which applicable codes, rules or regulations, bylaws or ordinances were not in use at the time of such construction or alteration, the provisions of 780 CMR 103.0 shall apply.

**102.5.4** In cases where the provisions of 780 CMR are less stringent than the applicable codes, rules or regulations, bylaws or ordinances at the time of such construction or substantial alteration, the applicable provisions of 780 CMR shall apply, providing such application of these provisions does not result in danger to the public, as determined by the building official.

**102.5.5** *Existing buildings* or parts or portions thereof which are proposed to be enlarged, altered, repaired or changed in use or occupancy shall comply with the provisions of 780 CMR 34.

**102.5.6 Moved Structures:** *Buildings* or *structures* moved into or within the jurisdiction shall comply with the provisions of 780 CMR 34 provided that any new system shall comply as far as practicable with the requirements for new *structures* and provided further that the siting and *fire separation distance* comply with the requirements for new *structures*.

### 780 CMR 103.0  MAINTENANCE

780 CMR:   STATE BOARD OF BUILDING REGULATIONS AND STANDARDS

THE MASSACHUSETTS STATE BUILDING CODE

**103.1 General**: All *buildings* and *structures* and all parts thereof, both existing and new, and all systems and equipment therein which are regulated by 780 CMR shall be maintained in a safe, operable and sanitary condition. All service equipment, *means of egress*, devices and safeguards which are required by 780 CMR in a *building or structure*, or which were required by a previous statute in a *building* or *structure*, when erected, altered or repaired, shall be maintained in good working order.

**103.2 Owner responsibility**: The owner, as defined in 780 CMR 2, shall be responsible for compliance with provisions of 780 CMR 103.0.

### 780 CMR 104.0 VALIDITY

**104.1 General**: The provisions of 780 CMR are severable, and if any of its provisions shall be held unconstitutional or otherwise invalid by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions.

### 780 CMR 105.0 OFFICE OF THE INSPECTOR OF BUILDINGS OR BUILDING COMMISSIONER

shall have had general knowledge of the accepted requirements for building construction, fire prevention, light, ventilation and safe egress; as well as a general knowledge of other equipment and materials essential for safety, comfort and convenience of the occupants of a *building* or *structure*.

Each inspector of buildings shall be certified by the BBRS in accordance with the provisions of 780 CMR R7, the Rules and Regulations for the Certification of Inspectors of Buildings, Building Commissioners and Local Inspectors.

Municipalities may require additional qualifications or experience as are deemed necessary.

**105.1 Appointment**: The chief administrative officer of each city or town shall employ and designate an inspector of buildings or building commissioner (hereinafter inspector of buildings) as well as such other local inspectors as are reasonably necessary to assist the inspector of buildings to administer and enforce 780 CMR and of M.G.L. c. 22, § 13 A and the rules and regulations made under the authority thereof. The inspector of buildings shall report directly to and be solely responsible to the appointing authority.

**105.2 Alternate**: The inspector of buildings is authorized to designate an alternate who shall exercise all the powers of the inspector of buildings during the temporary absence, disability or conflict of interest of the inspector of buildings. Said alternate shall be duly qualified pursuant to 780 CMR 105.3.

**105.3 Qualifications of the Inspector of Buildings**: In accordance with the provisions of M.G.L. c. 143, § 3, each inspector of buildings shall have had at least five years of experience in the supervision of building construction or design or in the alternative a four year undergraduate degree in a field related to building construction or design, or any combination of education and experience which would confer equivalent knowledge and ability, as determined by the BBRS. In addition each inspector of buildings

**105.4 Qualifications of the local inspector**: In accordance with the provisions of M.G.L. c. 143, § 3, each local inspector shall have had at least five years of experience in the supervision of building construction or design or in the alternative a two year associates degree in a field related to building construction or design, or any combination of education and experience which would confer equivalent knowledge and ability, as determined by the BBRS. In addition, such persons shall have had general knowledge of the accepted requirements for building construction, fire prevention, light, ventilation and safe egress; as well as a general knowledge of other equipment and materials essential for safety, comfort and convenience of the occupants of a *building* or *structure*.



# Robson Forensic
### INCORPORATED

May 18, 2005

Eddi Z. Zyko, Esquire
120 Fenn Road
Middlebury, CT 06762-2515
Tel: 203 758 8119
Fax: 203 598 7994

<u>VIA FACSIMILE</u>

Re: Rosemary Hughes

Dear Attorney Zyko:

Attached are portions of the 6th Edition of the Massachusetts Building Code regarding the responsibility of a building owner to maintain the building in a safe condition (Chapter 1), and the definition of "Owner" (Chapter 2).

The 6th Edition of the code has been effective since February 28, 1997.

Please call if you have any questions.

Sincerely,
Robson Forensic, Inc.

David C. Cowen, A.I.A.

Attachments: 4 pages

60 Mall Road Suite 100
Burlington, MA 01803
Phone: 617.330.7489
Toll Free: 800.813.1753
Fax: 781.229.0851
www.robsonforensic.com

Exhibit D

780:  CMR: STATE BOARD OF BUILDING REGULATIONS AND STANDARDS

*780 CMR 2.00*

DEFINITIONS

one- and two-story dwellings, barns, sheds, agricultural and accessory buildings and other structures when permitted by 780 CMR R4.

**Nominal dimension**
  Lumber: See 780 CMR 2302.0.

**Noncombustible**: This is a general, relative term. Its precise meaning is defined in 780 CMR for specific applications.

**Noncombustible building material**: See 780 CMR 704.4.1.1

**Occupancy**: The purpose for which a building or portion thereof is used.

**Occupancy, change of**: A change in the purpose or level of activity within a structure that involves a change in application of the requirements of 780 CMR.

**Occupant load**: See 780 CMR 1002.0.

**Occupiable space**: See 780 CMR 1202.0.

**Occupied**: As applied to a building, shall be construed as though followed by the words "or intended, arranged or designed to be occupied."

*Official Interpretation: A written interpretation of any provision of 780 CMR, or to its referenced standards listed in Appendix A, except specialized codes, made by the BBRS, under authority of M.G.L. c. 143, § 94(e), or by the State Building Code Appeals Board under authority of M.G.L. c. 143, § 100.*

**Open system**: See 780 CMR 307.2.

**Organic peroxide**: See 780 CMR 307.2.

**Oriel window**: See 780 CMR 3203.2.

**Owner**: *Every person who alone or jointly or severally with others (a) has legal title to any* building or structure; or (b) has care, charge, or control of any building or structure in any capacity including but not limited to agent, executor, executrix, administrator, administratrix, trustee or guardian of the estate of the holder of legal title; or (c) lessee under a written letter agreement; or (d) mortgagee in possession; or (e) agent, trustee or other person appointed by the courts. *Each such person is bound to comply with the provisions of 780 CMR.*

**Oxidizer**: See 780 CMR 307.2.

**P-Delta effect**: See 780 CMR 1612.3.

**Panel (part of a structure)**: See 780 CMR 1602.0.
**Particleboard**: See 780 CMR 2302.1.

**Penthouse**: See 780 CMR 1502.1.

**Permit**: An official document or certificate issued by the authority having jurisdiction which authorizes performance of a specified activity (see 780 CMR 111.1).

**Person**: Includes a corporation, firm, partnership, association, organization and any other group acting as a unit as well as individuals. It shall also include an executor, administrator, trustee, receiver or other representative appointed according to law. Whenever the word "person" is used in any section of 780 CMR prescribing a penalty or fine, as to partnerships or associations, the word shall include the partners or members thereof, and as to corporations, shall include the officer, agent or members thereof who are responsible for any violation of such section.

**Physical hazard**: See 780 CMR 307.2.

**Physically disabled person**: See 780 CMR 11.

*Place of assembly: A room or space accommodating 50 or more individuals for religious, recreational, educational, political, social or amusement purposes, or for the consumption of food*

780 CMR 1.00

# CHAPTER 1

## ADMINISTRATION
### *(Substantial portions of this Chapter are entirely unique to Massachusetts)*

### 780 CMR 101.0 SCOPE

**101.1 Title**: 780 CMR shall be known as the Commonwealth of Massachusetts State Building Code.

**101.2 Scope**: 780 CMR, in accordance with St. 1984, c. 348, as amended shall control all matters concerning;

(a) the construction, reconstruction, alteration, repair, demolition, removal, inspection, issuance and revocation of permits or licenses, installation of equipment, classification and definition of any *building* or *structure* and use or *occupancy* of all *buildings* and *structures* or parts thereof except bridges and appurtenant supporting structures which have been or are to be constructed by, or are under the custody and control of the Department of Public Works (Massachusetts Highway Department), the Massachusetts Turnpike Authority, the Massachusetts Bay Transportation Authority, the Metropolitan District Commission, or the Massachusetts Port Authority or for which said agencies have maintenance responsibility;

(b) the rehabilitation and maintenance of *existing buildings*;

(c) the standards or requirements for materials to be used in connection therewith, including but not limited to provisions for safety, ingress and egress, energy conservation and sanitary conditions;

(d) the establishment of reasonable fees for inspections and the issuance of licenses to individuals engaged as construction supervisors;

(e) the certification of inspectors of buildings, building commissioners and local inspectors and;

(f) the registration of Home Improvement Contractors pursuant to MGL c 142A, except as such matters are otherwise provided for in the Massachusetts General Laws Annotated, or in the rules and regulations authorized for promulgation under the provisions of 780 CMR.

(g) other duties and responsibilities as defined in 780 CMR R1 through R7.

**101.3 Application of references**: Unless otherwise specifically provided for in 780 CMR, all references to chapter or section numbers, or to provisions not specifically identified by number, shall be construed to refer to such chapter, section or provision of 780 CMR.

**101.4 Intent**: 780 CMR shall be construed to secure its expressed intent, which is to insure public safety, health and welfare insofar as they are affected by building construction, through structural strength, adequate *means of egress* facilities, sanitary conditions, light and ventilation, energy conservation and fire safety; and, in general, to secure safety to life and property from all hazards incident to the design, construction, reconstruction, alteration, repair, demolition, removal, use or *occupancy* of *buildings*, *structures* or *premises*.

**101.5 Specialized Codes**: Specialized codes, rules or regulations pertaining to building construction, reconstruction, alteration, repair or demolition, promulgated, and under the authority of the various boards which have been authorized by the general court shall be incorporated into 780 CMR. The said specialized codes, rules or regulations include, but are not limited to, those listed in *Appendix A*.

**101.6 Referenced standards**: The standards referenced in 780 CMR and listed in *Appendix A* shall be considered part of the requirements of 780 CMR to the prescribed extent of each such reference. Where differences occur between provisions of 780 CMR and referenced standards, the provisions of 780 CMR shall apply. The administrative provisions of 780 CMR shall apply to all standards referenced in *Appendix A*, other than the specialized codes in 780 CMR 101.5.

### 780 CMR 102.0 APPLICABILITY

**102.1 General**: The provisions of 780 CMR shall apply to all matters affecting or relating to *buildings*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROSEMARY A. HUGHES, | : | CIVIL ACTION: |
| | : | 3:02-cv-2177 (RNC) |
| Plaintiff, | : | |
| | : | |
| V. | : | May 17, 2005 |
| | : | |
| | : | |
| EQUITY OFFICE PROPERTIES TRUST, | : | |
| | : | JURY TRIAL REQUESTED |
| Defendant. | : | |

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

STATE OF MASSACHUSETTS
                SS: BURLINGTON
COUNTY OF MIDDLESEX

1. I am over the age of 18 years and understand the meaning of an oath.

2. I am personally familiar with that stated herein.

3. I am David C. Cowen, A.I.A of Robson Forensic Inc., Forensic Engineers, Architects, Scientists & Fire Investigators, 60 Mall Road, Suite 100, Burlington, MA 01803 and have been disclosed as a plaintiff's expert in the above captioned case. My current resume is at Exhibit A hereto and made part hereof.

4. My opinions in the above captioned case, and their basis, are delimited in my report of October 29, 2004, which is Exhibit B hereto and made part hereof.

**1 of 2**

David C. Cowen, A.I.A
Robson Forensic Inc., Forensic Engineers,
      Architects, Scientists
      & Fire Investigators
60 Mall Road, Suite 100
Burlington, MA  01803

Subscribed and sworn under the pains and penalties of perjury before me this

17th day of May, 2005.

_____ (Signature)
                       (Type/Print Name)
Notary Public
My commission expires _May 19, 2006_

AFFIX SEAL HERE

## CERTIFICATION OF SERVICE

I hereby certify that on May 3 0   , 2005 a copy of the foregoing was mailed first class, postage prepaid to the counsel for the defendants: Morrison, Mahoney & Miller, One Constitution Plaza, 10th Floor, Hartford, CT 06103.


*Eddi Z. Zyko*

EDDI Z. ZYKO, ESQUIRE

3



**Robson Forensic:**
I N C O R P O R A T E D

### DAVID C. COWEN, A.I.A.
Architect

## AREAS OF EXPERTISE

**Premises Liability**: Analysis of Slips, Trips and Falls; Walkway Construction and Safety; Slip Resistance; Effectiveness of warnings; Illumination; Delineation of hazards

> Parking lots; Stairs, Ramps, Corridors; Platforms and level changes; Snow and ice; Retail displays; Food services; Furniture; Electrical devices; Moving Equipment; Walk-off mats; Recreational devices and equipment; Pools and athletic surfaces; automatic doors

> Building Codes and standards; Lighting; Glass and glazing; Handicapped accessibility; Children and elderly; Security

**Design and Planning**: Land development; Facility planning; Zoning; Building codes & standards; Accessibility.

**Building Failures**: Cracking/Settling/Collapse; Water intrusion; Fire/Smoke damage; Fungal growth; Insect damage; Roof/Wall failures; Fires, Acoustics

**Operations and Maintenance**: Wet floors; Warnings; Sweep logs; Floor finishes and application, Landscaping; Building repairs; Preventative Maintenance; Snow & Ice Control; Inspections, Standards

**Building Systems**: Plumbing/Supply/Waste; Sprinklers; Alarms; Lighting; MEP equipment & controls; Interior air quality; Wood/coal stoves; Chimneys & flues.

**Architectural Practice**: Standard of Care, Contracts, Records, Planning, Inspections, Construction supervision and observation, Punch lists, Approvals

**Construction Safety**: Safety practices, procedures and record keeping, incidents on building construction sites including falls from roofs, steel framing, unprotected openings, and injuries from unsafe working conditions.


## ROBSON Forensic
### INCORPORATED

**DAVID C. COWEN, A.I.A.**
**Architect**

## PROFESSIONAL EXPERIENCE

2003 to
present
**Robson Forensic, Inc.**
*Associate*
Provide technical investigations, analysis, reports, and testimony towards the
resolution of commercial and personal injury litigation involving planning and design
and construction of buildings and failure analysis.

2000 to
2002
**Office of M. Rosenfeld**, Acton, Massachusetts        (architects and planners)
*Senior Construction Administrator*
Senior construction phase architect for firm specializing in educational, institutional
and high end residential projects.  Expertise in inspection of contractor work
throughout construction to assure conformance with contract and quality of
construction, management of all contract changes to the Work, knowledge of
construction procedures and safety of workers and occupants during the construction.

1997 to
2000
**David Perry Architects**, Cambridge, Massachusetts        (architects and planners)
*Senior Associate*
Serviced a wide variety of project types including: college and university buildings,
religious facilities, and affordable housing.  Expertise in oversight and management
of construction contract documents and construction phase activities.

1995 to
1997
**Northeastern University**, Boston,  Massachusetts
*Architect, Dept. of Physical Plant*
On-site architect for new student recreation center building with retail services.
Investigation, evaluation, and analysis of existing campus buildings.

1993 to
1995
**Dinisco Associates Architects**, Boston, Massachusetts        (architects and planners)
*Project Manager*
Building and safety code analysis, construction administation.

1990 to
1993
**Kubitz Associates Architects**, Wellesley, Massachusetts
*Project Manager*
Expertise in commercial airline terminals and aviation facilities.

1983 to
1990
**Drummey Rosane Anderson**, Newton, Massachusetts(architects and interior designers)
*Associate, Project Manager*
Expertise in commercial office parks and tenant fit-ups, secondary schools, and
laboratory and science facilities.



# ROBSON FORENSIC
INCORPORATED

**DAVID C. COWEN, A.I.A.**
**Architect**

1982 to     **Kubitz Associates Architects**, Wellesley, Massachusetts
1983        *Site Inspector*
            Architects for aviation and mass transit facilities and institutional buildings.  Daily
            inspections and documentation of reconstruction of condemned five year old athletic
            facility.

1978 to     Architectural Practices in Cincinnati, Ohio and Boston, Massachusetts
1983        *Architectural Intern/Designer/Draftsman*
            Wide variety of project types including institutional and retail facilities.


## PROFESSIONAL CREDENTIALS

Registered Architect:  Commonwealth of Massachusetts


## EDUCATION

Bachelor of Arts, Gannett Scholar, Carleton College, Northfield, Minnesota, 1975

Professional degree work/study program 1977-81, Dept. of Architecture, College of
Design Art & Architecture, University of Cincinnati

*Training Courses:*
Continuing education classes (i.e., construction safety, cavity wall construction,
        construction specifications) and over thirty seminars on topics including
        professional liability and insurances, construction contracts, and a wide
        variety of building products, such as window systems, skylights, door
        hardware, floor finishes, paint systems, and masonry.
OSHA #500 Construction Industry Outreach Trainer, 2003


## PROFESSIONAL MEMBERSHIPS

American Institute of Architects

Boston Society of Architects

EXHIBIT B

# Architect's Report
## On the
## Rosemary Hughes Injury

Robson Forensic No. 04NE0087

Prepared by:

David C. Cowen, A.I.A

October 29, 2004

## HUGHES FALL

**PRELIMINARY REPORT**                                    **October 29, 2004**

### A.    BACKGROUND

On December 9, 2000, Rosemary Hughes was a patron at the Houlihan's Restaurant in Boston, Massachusetts. Hughes fell while using the stairs in the restaurant, and she was injured.

I was requested to determine if conditions existed that were dangerous in a manner related to Hughes' fall.

### B.    MATERIALS AVAILABLE FOR REVIEW

1.    Complaint.

2.    Deposition of Rosemary Hughes.

3.    Lease for Houlihans Restaurant at 60 State Street.

4.    Teleconference with Rosemary Hughes, October 27, 2004.

### C.    BACKGROUND

The subject building, 60 State Street, Boston, Massachusetts, is a large downtown office building with restaurant space on the ground and lower levels of the building. The restaurant began a lease in the subject space in 1977, fitting out their space thereafter in accordance with the requirements of the building owner. The building owner is Equity Office Properties Trust, Chicago, Illinois.

Hughes fell while descending the stairs from the main restaurant level (street level) to the waiting area of the restaurant in a lower level. The top of the stairs were reached by entering the restaurant and passing the hostesses' desk. The stairway

was enclosed with walls on both sides and a sloping ceiling above. The stair was open at both the top and bottom. Stairway treads were finished in wood in natural finish. The treads were approximately 1'-6' deep. A handrail was provided on the right side of the stair. The handrail was round in profile, of a diameter larger than Hughes ability to close her hand around it and touch a finger to thumb. The handrail was bracketed off the wall.

The stair descended in a straight run with no turns from the main level of the restaurant to the waiting area directly at the bottom of the stairs. At the bottom of the stair tall stools were within a few feet of the bottom riser.

## D.    HUGHES FALL

Hughes and three friends were on a sightseeing day trip to Boston from their homes in Connecticut. They came to Boston on a chartered bus and arrived at approximately 11 a.m. They were left off the bus in the area of Fanueil Hall Marketplace. Hughes and her friends decided to have lunch before undertaking other activities of the day, and elected to eat at the Houlihan's Restaurant, a short walk from where they got off the bus.

After entering the restaurant, Hughes and her friends were directed by the hostess to a waiting area at the bottom of the subject stairs. Rosemary was following her friend Barbara, and the two other friends, Alice and Joan, were following Rosemary. The stair was dark and dimly lit, and contrasted with the brightly lit restaurant area which had numerous windows to natural daylight.

Hughes was careful in her use of stairs at the time of (and prior to) this fall, due to medical infirmity of her right knee, back and hands. She always used a handrail when descending, and proceeded down one step at a time. She followed this manner on her approach to this stair.

Hughes grasped the handrail and stepped with her left foot down the first riser.
She could not see the first tread onto which she was stepping due to dim light. As
she was taking her first step down, the handrail wobbled, moving approximately
one inch. Since she was relying on the rail for balance, she lost her footing and
began falling down the stairs. She was unable to recover from her fall, and
continued falling down the flight of stairs until she struck stools near the bottom of
the stairs.

Emergency medical ambulance was summoned and Hughes was taken by the
ambulance to a hospital for treatment of the injuries sustained in the fall.

**E.    ANALYSIS**

1.    Standards for Egress Stairs

The Massachusetts Building code in its various editions is based on the BOCA
National Building Code, a national standard. BOCA has required continuous
handrails on both sides of a stair, and that interior stairs be illuminated, since at
least 1970. BOCA also requires that rails be of substantial structural stability and
that they be installed and maintained in a workmanlike manner. The building code
requires owners of buildings to maintain safe exitways, including stairways,
regardless of their date of construction.

Secure handrails have long been known to be an important element of safe stairs.
Guidelines for Stair Safety is a 1979 nationally published study by the National
Bureau of Standards and the CPSC. According to the guidelines, handrails serve
several important functions. They "provide a surface along which the user can
slide a hand, and thereby monitor his progress and stability during negotiation,"
and "they provide extra support for the elderly or infirm," and "they provide a grab
bar necessary for support in the event of an accident on the stairway." The
guidelines advise that "secure handrails should be available to the user at every
point throughout the use of the stair or landing."

The subject stair did not comply with applicable maintenance standards for safe
stairs in permitting a handrail that was not firmly anchored to the wall.

2.      Causes of Hughes' Fall

When Hughes approached the stair, her eye was drawn down the stairs to the more brightly lit waiting area at the bottom. Hughes looked at the stair as she was stepping, and perceived it within the limit of lighting provided.

Stable and graspable handrails are necessary safety equipment at stairs. The lack of secure handrail did not comply with applicable standards for safe stairs. This impaired Hughes ability to stabilize her descent, caused her to lose her balance, and deprived her of the opportunity to recover her balance without falling.

The wobbly handrail did not comply with applicable standards for a secure handrail and was dangerous. The handrail failed to provide for a secure grasp necessary for safe stairs, and for use by those with medical limitations. That the stair was dimly lit accentuated the need for a well-anchored handrail as a guide for the stair user.

## F.    FINDINGS

Within the bounds of reasonable architectural and technical certainty, and subject to change if additional information becomes available, it is my professional opinion that:

1.      The stair handrail where Hughes fell did not comply with applicable building codes and standards for safe stairs as they were maintained.

2.      The stair handrail was dangerous in a manner that resulted in Hughes fall and injury.

David C. Cowen, A.I.A.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROSEMARY A. HUGHES | : | CIVIL ACTION: |
| | : | 3:02-cv-2177 (RNC) |
| Plaintiff, | : | |
| V. | : | May 24, 2005 |
| | : | |
| EQUITY OFFICE PROPERTIES TRUST | : | |
| | : | JURY TRIAL REQUESTED |
| Defendant. | : | |

### NOTICE OF MANUAL FILING OF PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Please take note that plaintiff manually filed and served defendant her Memorandum in Opposition to Defendant's Motion for Summary Judgment. This document has not been filed electronically, because the plaintiff does not have the capability to so do.

THE PLAINTIFF,

BY _Eddi Z. Zyko_

EDDI Z. ZYKO, ESQUIRE
120 FENN ROAD
MIDDLEBURY, CT 06762
CT JURIS NO. 71655
FEDERAL BAR NO. CT-14172
TEL NO: 203-758-8119
FAX NO: 203-598-7994

### CERTIFICATION OF SERVICE

I hereby certify that on May 24, 2005 a copy of the foregoing was mailed first class, postage prepaid to the counsel for the defendants: Morrison, Mahoney & Miller, One Constitution Plaza, 10th Floor, Hartford, CT 06103.

_Eddi Z. Zyko_

EDDI Z. ZYKO, ESQUIRE